CLIFTON HEIGHTS LAND COMPANY, Appellee, v. B. F. RANDELL, Appellant.

1. **Conveyance:** UNINCORPORATED COMPANY: TITLE. A conveyance of real estate to an unincorporated company, under which possession is taken, will vest in the company the title thereto as against one claiming the property under an inferior title.

2. ———: DESCRIPTION: OMISSIONS COVERED BY GENERAL CLAUSE. The property description in the deed under which the plaintiff claimed covered over two pages of legal-cap paper, describing the property by numbers of lots, blocks and government subdivisions, and was followed by the clause, "also together with all other lands that may not have been heretofore described belonging to said South Park Company." *Held*, that property owned by plaintiff's grantor at the time of such conveyance would pass under the clause quoted, though not included in the particular description.

3. **Tax Deed:** NOTICE TO REDEEM: PROPERTY ASSESSED TO PERSON WITHOUT INTEREST. Service of notice to redeem from tax sale of real estate upon the person in possession, and upon one to whom the property is assessed upon the tax books, will, in the absence of fraud, be deemed sufficient, though the person to whom the property was assessed had in fact no interest in the property whatever.

4. **Tax Title:** ACTION TO RECOVER PROPERTY: STATUTE OF LIMITATIONS. At the time that defendant's grantor became entitled to a tax deed to the property in controversy there was a tenant in possession under a lease from plaintiff's grantor, who thereafter remained in possession, and continued to pay rent to the plaintiff or its grantor for the period of more than five years. Before the five years expired the defendant, having acquired title to the property from the holder of the tax certificate, made a verbal agreement with the tenant thus in possession to lease him the property in consideration of his keeping the same in repair. At this time the defendant knew that the tenant was under lease from plaintiff's grantor, that the land was used for agricultural purposes, and that it was then in the midst of the crop season. *Held*, that the possession of the tenant was that of the plaintiff and its grantors, and that defendant's right to recover possession of the property was barred by the statute of limitations.

*Appeal from Polk District Court.* — HON. W. F. CONRAD, Judge.

MONDAY, FEBRUARY 2, 1891.

ACTION to quiet the title to lot 22, South Park addition to Des Moines, Iowa. The plaintiff claims to be the owner of said lot by patent title, and the defendant claims to own it under a tax sale thereof for the taxes of 1877, and a deed issued thereon. Each party denies the other's title. A decree was entered for the plaintiff, from which the defendant appeals.—*Affirmed.*

*Kauffman & Guernsey*, for appellant.

*C. C. & C. L. Nourse*, for appellee.

GIVEN, J.—I. B. F. Allen was the owner of the patent-title to a tract of land including the lot in question.

1. CONVEYANCE: unincorporated company: title.

He conveyed the tract by deed, dated February 15, and recorded March 3, 1870, to the South Park Company, the plaintiff's grantor, by which it was, with other land, platted into lots, etc. April 22, 1870, articles of incorporation of the South Park Company were filed for record. The appellant contends that as the South Park Company was not incorporated when the deed was executed there was no grantee, and, therefore, the deed did not pass title to anyone. It does not appear that the South Park Company either received or made conveyance of this lot as a corporation. Surely a company may be so organized as to do both without being incorporated. Assume, however, as is probably the fact, that the South Park Company did receive and convey title as a corporate body, we think the title from Allen vested in it as against one not holding by a superior title, not only because of the conveyance, but because of possession taken under it.

II. The South Park Company conveyed to the plaintiff by deed, wherein the description of the property is given by lots, blocks or government subdivisions, covering over two pages of legal cap, followed by these words:

2. ——: description: omissions covered by general clause.

"Also together with all the lands that may not have been heretofore described belonging to the said South Park Company." The appellant contends that as certain lots are expressly mentioned, that excludes all others, and as lot 22 is not mentioned it did not pass by the deed. Such a construction of this deed would be against the manifest intent of the grantor. The evident purpose was to convey all the land owned by the grantor. The lots were numerous, the description lengthy, and omissions were possible. To cover any omissions and express the purpose of the parties the recital quoted was added as descriptive of what further was conveyed. We are in no doubt but that plaintiff is the owner of lot 22, unless defendant's tax title divested it or its grantor of ownership.

III. The lot in controversy was sold October 21, 1878, for the taxes of 1877, to W. O. Curtis, who assigned the certificate to E. J. Adams, to whom a tax deed was executed July 18, 1388; in pursuance of notice to redeem, served by Adams on the defendant Randell, in whose name the lot was then taxed on August 19, 1881, and on John Brown, the person in possession, which notices were filed in the treasurer's office September 21, 1881. July 20, 1883, Adams executed a quitclaim deed for said lot 22 to the defendant for the consideration of one hundred dollars. The plaintiff charges that the tax title was obtained by fraud and collusion, and relies upon the fact that the lot was taxed in defendant's name, and service of notice to redeem accepted by him when he had no interest whatever in the lot. There is no evidence that anyone procured the lot to be taxed in his name, and we are inclined to believe it was by mistake, because of his owning lot 18, adjoining. It is not clear why the defendant accepted service of a notice to redeem a lot in which he had no interest, but this alone does not warrant a finding of fraud in procuring the tax title. Some stress is laid upon the delay in taking a tax deed. Adams' explanation

3. TAX deed: notice to redeem: property assessed to person without interest.

is that he neglected to do so. Whatever may have been the reason, there is nothing connecting the defendant with it nor showing that it was for a fraudulent purpose. Service of notice on John Brown, the person in possession, was sufficient, so far as notice is concerned, though none had been served on defendant.

IV. The notices to redeem served on defendant and Brown were filed in the treasurer's office September 21, 1881, and Adams was entitled to a deed ninety days thereafter, to-wit, December 22, 1881, at which time the five-year limitation commenced to run. The plaintiff claims that the tax deed is void because the plaintiff and its grantors had actual possession of the lot, by John Brown as tenant, during all the time since elapsing. The defendant claims that he was in possession since July, 1883, by John Brown as his tenant. John Brown went into possession of lot 22 as early as 1881, under a written lease of that and other land for three years from the South Park Company. This lease was extended by verbal agreement between Brown and the South Park Company, and between him and the plaintiff from year to year. Brown remained in possession, cultivating the land, and paying the rent agreed upon to the South Park Company, until the time it conveyed to the plaintiff, and thereafter to the plaintiff. The defendant claims that soon after acquiring his title from Adams, in July, 1883, he leased lot 22 to Brown by verbal agreement, and afterwards by written lease, and that Brown was in possession as his tenant from July, 1883. The defendant and Brown alone testified as to such agreement. It appears that soon after obtaining his deed the defendant called upon Brown on the premises and found him engaged in haying on lot 22. Defendant says: "I asked him if he had a lease, or if he had rented this property, describing it, and he said he had a lease from the South Park Company. As I now remember it, he said his lease had expired." The defendant told Brown that he owned the lot, and offered

4. TAX title: action to recover property: statute of limitations.

to let him have the use of it for taking care of the fences, trees, etc., to which Brown assented. The defendant must have known that Brown was then in possession as tenant of the South Park Company, and that whatever was said about his lease having expired could not relate to his then possession. The land was being used for agricultural purposes. This was in the midst of the crop season, and Brown was in possession, engaged at the very time in taking off the crop of hay. The possession of Brown at that time was the possession of the plaintiff. *Stout v. Merrill*, 35 Iowa, 47. The conversation between them was not as definite as usually attends the making of a lease. The defendant had theretofore given Brown the use of lot 18 for taking care of it, and proposed to let him have the use of lot 22 on the same terms, to which Brown replied: "That was all right." All that defendant required of Brown was to take care of the lot, and as Brown was already under obligation to do so he could very well reply that it was all right. In the absence of any question as to the right of these parties to agree, as claimed, it would be questionable whether what was said would amount to such an agreement. Viewed in the light of the fact that the defendant knew Brown was in possession under the plaintiff, that the possession was for agricultural purposes, and that it was then the middle of the crop season, we cannot believe that the defendant understood or regarded Brown as his tenant because of what had been said that day. The fact that the defendant afterwards procured Brown to sign a written lease tends to support the conclusion that he did not previously regard him as his tenant. That Brown did not regard himself as defendant's tenant is evidenced by the fact that he continued to pay rent to the South Park Company, and to plaintiff. The written lease was not made until March 1, 1887, which was more than five years after the statute of limitations began to run, and does not, therefore, affect the question of possession. Our conclusion is that the plaintiff and its grantors, through Brown as

tenant, continued in possession to the bringing of this action.

V. Appellant complains that the decree of the court below does not provide for the repayment of the taxes for which the property was sold. It is a sufficient answer to say that defendant asks no relief whatever. As these conclusions fully dispose of the case, we do not notice other questions discussed.

The judgment of the district court is AFFIRMED.