(December 18, 1891.)

## DURANT ET AL. v. COMEGYS ET AL.

[28 Pac. 425.]

TIME ESSENCE OF CONTRACT—CONTROLLED BY CIRCUMSTANCES.— Though time may be expressly made of the essence of a contract, or may appear to be so from the circumstances of the case, and laches a bar to a specific performance, yet, generally, time is not so treated by a court of equity, in the absence of negligent delay, or delay unaccounted for.

CONTRACTS FOR PURCHASE OF MINING PROPERTY, TIME IS THE ESSENCE OF.—The rule that time is of the essence of the contract is especially applicable to contracts for the purchase and sale of mining properties.

SPECIFIC PERFORMANCE—WHERE TIME IS NOT OF THE ESSENCE OF CONTRACT.—In cases where specific performance is demanded on the ground that time was not of the essence of the contract, the court demands that the party shall make out a case free from doubt, and to show that the relief asked for is under all the circumstances of the case equitable, and to account in a reasonable manner for his delay and apparent omissions.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

W. T. Stoll and McBride & Allen, for Appellants.

Time is generally not of the essence of the contract, and th~ purchaser does not forfeit his right of purchase by negle. pay at the day. (*Wells v. Wells,* 3 Ired. Eq. 596; *Runne, Jackson,* 1 How. (Miss.) 358; *Brashier v. Gratz,* 6 Wheat. 8 *Hepburn v. Auld,* 5 Cranch, 270; *Taylor v. Longworth,* 14 P.

174; *Willard v. Tayloe,* 8 Wall. 557.)   It is not necessary to enable a party to specifically enforce a contract that the other could do the same thing.   While usually a contract must be such that the whole of it can be enforced, a party entitled to have it enforced may waive any defect or provision in his favor, and accept what he could not be forced to take.   (*Waters v. Travis,* 9 Johns. 460.)

Woods & Heyburn, for Respondents.

Where the time of payment by the vendee is made essential, the vendee must make an actual tender of the price, and a demand of the deed, at the specified time.   (*Duffy v. O'Donovan,* 46 N. Y. 228; *Gale v. Archer,* 42 Barb. 320; *Wells v. Smith,* 2 Edw. Ch. 78; *Kimball v. Tooke,* 70 Ill. 553; *Phelps v. Railroad Co.,* 63 Ill. 468; *Heuer v. Rutkowski,* 18 Mo. 216.)   Where a party has no right of action at law, equity will not interfere to enforce a contract unless there have been some circumstances of fraud, mistake, etc.   (*Allen v. Beal,* 3 A. K. Marsh. 554, 13 Am. Dec. 203; *Tevis v. Richardson,* 7 T. B. Mon. 654; *Buckmaster v. Grundy,* 8 Ill. 628; *Marston v. Humphrey,* 24 Me. 514.)   There must be a mutuality of contract before it can be enforced by a court of equity.   (*King v. Ruchman,* 20 N. J. Eq. 316.)

SULLIVAN, C. J.—This is an action brought to compel the specific performance of a contract to convey a two-thirds interest in a mining claim.   The amended complaint is as follows:

"[Title of Court and Cause.]

"Come now the plaintiffs above named, and by leave of the court first had and obtained, file this their amended complaint, and allege: 1. That the plaintiffs now are, and during all the times hereinafter mentioned were, citizens of the United States over the age of twenty-one years.   2. That prior to and at the time of the making and delivery of the agreements hereinafter mentioned the defendants George Comegys, Lake D. Wolfard, and Samuel B. Morgan represented and stated to the plaintiffs that they, the said Comegys, Wolfard, and Samuel B. Morgan, were the sole owners of that certain lode mining claim

known as and called the 'Tuscumbia lode,' situated on Goat mountain, in Beaver mining district, county of Shoshone and territory of Idaho, and being fifteen hundred (1,500) feet in length and six hundred (600) feet in width, and lying between the Tough Nut mine on the west and the Sitting Bull and Parrott mines on the east, as the same was located and marked upon the ground, and being the same mining claim located on the twentieth day of August, 1883, by William Sutherland, Charles W. Toole, and the defendant Samuel B. Morgan. 3. That heretofore, to wit, on the sixth day of March, 1888, the said defendants George Comegys, Lake D. Wolfard and Samuel B. Morgan, for a valuable consideration, made and entered into an agreement in writing to and with the plaintiffs, a copy of which agreement is hereto attached, and marked exhibit 'A,' and hereby made a part of this complaint; and that the 'Tuscumbia mine,' mentioned in said agreement, was the same lode mining claim heretofore described as the 'Tuscumbia lode' mining claim, and none other; and that at the time of making of said agreement the plaintiffs believed said statements and representations of said defendants Comegys, Wolfard, and Morgan, to the effect that they were the sole owners of said mining claim, and that, relying upon said statements and representations, and believing the same to be true, plaintiffs entered into said agreement. 4. That immediately after the making and entering into said agreement as aforesaid, and still relying upon said statements and representations, and believing the same to be true, and under and in pursuance of said agreement, and in performance of the terms and conditions of said agreement on their part, the plaintiffs in good faith entered into the possession of said mining claim, and commenced the work of prospecting and developing of said mining claim, and thereafter continued the said work of prospecting and developing of the said mining claim in a judicious manner, and in the manner for the best development thereof, and in so doing the plaintiff expended on said mine in such work more than five hundred ($500) dollars per month, until they had expended therein and in such work more than the sum of five thousand ($5,000) dollars, and that by such work and expenditure the said mining claim was developed from a mere prospect of but small value into a mine

worth many thousands of dollars, and that plaintiffs have ever since continued to be, and are now, in possession of said premises. 5. That afterward, to wit, on the first day of September, 1888, the plaintiffs elected to purchase the said two-thirds interest in said mining claim, and to form a corporation to own and work said mining claim, as provided in said agreement they might do, and notified said defendants Comegys, Wolfard, and Morgan of such election, and that said defendants Comegys, Wolfard, and Morgan, for a valuable consideration, entered into a supplemental agreement to and with the plaintiffs, whereby and by the terms whereof they agreed with plaintiffs that the plaintiffs should have until the first day of October, 1888, in which to elect to purchase the two-thirds interest in said mining claim mentioned in said agreement of March 6, 1888, and that time for making the payment of the sum of three thousand ($3,000) dollars therein [mentioned] should also be extended until said first day of October, 1888. 6. That said defendants Comegys, Wolfard, and Morgan were not at the time of making of said statements and representations and agreement of March 6, 1888, the sole owners of said Tuscumbia lode mining claim, as stated and represented by them as aforesaid, but, on the contrary, only held the title to an undivided fifty-sixtieths (50-60) thereof; and that the other undivided ten-sixtieths (10-60) thereof was owned by one Elgin Wilcox and one Charles W. Toole. That after the making of said agreement, to wit, on the fourth day of May, 1888, in a certain action then pending in the district court of said Shoshone county, wherein Charles W. Toole was plaintiff, and the defendant herein, Samuel B. Morgan, was defendant, a writ of attachment duly issued out of said court, and all of the right, title, and interest of the said Samuel B. Morgan in and to said mining claim was duly levied upon and attached by the sheriff of said county, as security for the payment of the sum of seven hundred and fifty ($750) dollars, then due and owing from said Morgan to the said Toole, which said attachment became and remained a lien upon said Morgan's interest in said mining claim from the said date of the levy of said attachment until long after the said first day of October, 1888. And that on said first day of October, 1888, there was also pending in the district court of said county a

certain action wherein Charles W. Toole and Elgin Wilcox and the defendant Samuel B. Morgan were plaintiffs, and the said defendants Comegys and Wolfard were defendants, in which action notice of the pendency thereof was duly filed in the office of the county recorder of said county, which action was brought for the purpose of obtaining a decree of said court setting aside and declaring void a certain deed, dated November 29, 1886, from William Sutherland to said defendants Comegys and Wolfard, and adjudging and decreeing the [said] Charles W. Toole and Elgin Wilcox to be the owners of an undivided one-sixth interest in said mining claim, and which said deed so sought to be set aside was a deed from said William Sutherland, one of the locators of said mining claim, to said Comegys and Wolford, and was part of the claim of title to said mining claim. That said last-mentioned action remained pending and undetermined in said court until the fourth day of June, 1889; and that on that day the said Comegys and Wolfard, without notice to the plaintiffs herein, and without their knowledge or consent, conveyed to said Elgin Wilcox and Charles W. Toole an undivided one-sixth interest in said mining claim. 7. That, after the first day of October, 1888, and prior to the fourth day of June, 1889, to wit, on the twenty-second day of May, 1889, the defendant Samuel B. Morgan conveyed to the defendant James W. McKune an undivided one-fourth interest in and to said mining claim, and plaintiffs allege that at the time of the making and delivery of said last-named deed the said defendant McKune had full knowledge of the said agreements between plaintiffs and defendants Comegys, Wolfard, and Morgan, and of the plaintiffs' rights thereunder, and that the plaintiffs allege upon information and belief that the defendants conspired together to cheat and defraud plaintiffs by clouding and embarrassing the title to said mining claim by placing the title thereto in the hands of third persons, who would pretend to be innocent purchasers, and that said deed to said McKune was made in pursuance of said conspiracy, and that the title to the interest so conveyed to said McKune was and is held by said McKune for the benefit of the defendants, and not otherwise; whereby the value of said mining claim was greatly diminished to the plaintiffs. 8. Plaintiffs further allege that they fully and in all

respects complied with and performed all the terms and condi-
tions of said agreements on their parts to be performed, until
the said first day of October, 1888, and that they have at all
times been ready and willing to carry out and perform all the
terms and conditions thereof on their part to be kept and per-
formed for the purchase of said two-thirds interest and the
organization of said corporation in accordance with the terms
of said agreements. But plaintiffs allege that the defendants
Comegys, Wolfard and Morgan have not at any time since
the making of said agreements been able to or in condition
to carry out or perform the conditions of said agreements on
their part to be performed. 9. That, although the said defend-
ants have never been able or willing to comply with their said
contract to convey the said Tuscumbia mine and premises as
required, the plaintiffs have offered and are willing to waive
the inability hereinbefore stated, and to accept a conveyance
from the defendants of the two-thirds thereof to themselves, and
have been always heretofore ready and willing to make the pay-
ments in said agreements specified therefor, and, in pursuance
thereof, have, prior to this action, offered to pay the said de-
fendants the sum of money specified as the purchase price, and
demanded of the defendants the conveyances required in such
case by said agreements; and plaintiffs allege that the said pur-
chase price was declined by defendants, and the demand for con-
veyance refused; wherefore plaintiffs claim relief as follows:
That the defendants be required to convey to the plaintiffs, upon
the payment of the purchase price specified, less such deduction
as the court may find to be equitable on account of the inability
of defendants to fully comply with said agreements the prem-
ises so agreed by them to be conveyed, to wit, an undivided two-
thirds of said Tuscumbia mine; that the conveyance to said Mc-
Kune be declared and decreed to be fraudulent and void as
against the plaintiffs; that the amount, less any deductions from
said purchase price, be ascertained and determined, and the
amount to me paid to the defendants be in like manner ascer-
tained and determined. And as a further relief, pending this
action, the said defendants and all persons claiming interests in
said mine adverse to the plaintiffs and under these defendants
be enjoined from interfering with the possession of these plain-

tiffs in or to said premises, or to the ores or minerals therein or thereon, and from conveying or encumbering the same, until the final determination of this action, and for such other and further relief as may be equitable and just, and for costs.

> "JOHN R. McBRIDE,
> "W. T. STOLL,
> "ALBERT ALLEN,
> "Attorneys for Plaintiffs."

### EXHIBIT 'A.'

"This agreement and contract, made this sixth day of March, A. D. 1888, by and between George Comegys, Lake D. Wolfard, and Samuel B. Morgan, parties of the first part, and Alexander H. Tarbet, and Oliver Durant, parties of the second part, witnesseth that the said parties of the first part for and in consideration of the covenants and agreements hereinafter made and to be performed by said parties of the second part, agree that the parties of the second part herein may take immediate possession of the 'Tuscumbia' mine for the purpose of prospecting and doing development work thereon. The parties of the second part herein agree to commence such prospecting and development work not later than June 1, 1888, and continue the same in a judicious manner for the best development of said Tuscumbia mine, at an expenditure of not less than $500 per month on said mine, until the whole sum of $3,000 is expended. That on or before the first day of September, 1888, the parties of the second part may elect to purchase an undivided two-thirds interest in said mine for the sum of $17,000 to be paid to the parties of the first part as follows: $3,000 on the said first day of September, A. D. 1888, and the sum of $14,000 to be paid to the parties of the first part on or before December 1, A. D. 1888. Whereupon, after said conditions and terms are fully complied with on the part of the parties of the second part, and as soon as said $14,000 shall have been paid to the parties of the first part, according to the terms and in the manner hereinbefore set forth, then the parties of the first part herein agree and covenant with the parties of the second part to remise, release, and forever quitclaim unto the parties of the second part an undivided two-thirds interest in and to the 'Tus-

cumbia' mine.   Upon the parties of the second part purchasing the said two-thirds interest in the said 'Tuscumbia' mine as aforesaid, they, the said parties of the second part, may elect to form a corporation for the purposes, among others, of purchasing and working the said mine, such corporation to have a capital stock of $1,500,000, to consist of 300,000 shares of the par value of five dollars per share, fully paid up, and nonassessable; of said stock 50,000 shares to be set aside as a working capital, and the remaining 250,000 shares to be issued to the parties hereto, respectively, according to their respective interests in said mine, in payment therefor, to wit, to the parties of the first part 83,334 shares, and to the parties of the second part 166,666 shares; and upon the receipt of the same the said parties hereto do hereby mutually agree one with the other to make, execute and deliver a good and sufficient deed conveying by quitclaim to such corporation such parties' interest in said mine; that is to say, the first party shall convey and quitclaim the undivided one-third interest in said mine, and the second parties the undivided two-thirds interest in said mine, to such corporation.   In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

"GEORGE COMEGYS.   [Seal]

"Witness signature George Comegys: J. N. BALTHIS.

"LAKE D. WOLFARD.     [Seal]

"Witness signature of Lake D. Wolfard: THOMAS SECRETT.

"SAMUEL B. MORGAN.   [Seal]

"Witness signature Samuel B. Morgan: J. W. McKUNE.

"ALEX. H. TARBET.     [Seal]

"Witness signature Alex. H. Tarbet: F. T. McBRIDE.

"OLIVER DURANT.        [Seal]

"Witness signature Oliver Durant: C. M. HALL."

The defendants interposed demurrer to the amended complaint, on the ground that said complaint did not state facts sufficient to constitute a cause of action.   The demurrer was sustained by the court.   The plaintiffs thereupon elected to stand upon their amended complaint, and thereafter said action was dismissed at plaintiffs' costs.   Thereupon an appeal was

taken to this court at its April term, 1891. Said appeal was dismissed without prejudice, on the ground that the record failed to show that judgment of dismissal had been entered in the court below. After such dismissal the court below entered judgment, and the case is brought here on an appeal from the order sustaining said demurrer and from the judgment of dismissal.

The respondents question the authority of the court below to enter judgment, as was done in this case, and cite some authority in support of that proposition, but, in our view of the case, it is unnecessary for us to pass upon the question thus raised. The demurrer admits all of the allegations of the amended complaint. The question for our determination then is, Do the facts stated in the amended complaint authorize the court to enter a decree in favor of the plaintiffs? The agreement on which this action was brought is attached to the amended complaint, and made a part thereof, and is above set forth in full. It is admitted that the appellants did not tender the $3,000, due by the terms of the original agreement on the first day of September, 1888, and by the supplemental agreement, on the first day of October, 1888. It is also conceded that appellants failed to tender the $14,000 due by the terms of said agreement on the first day of December, 1888. It is also conceded that the appellants have been in default. The question then is, Do they allege in their amended complaint facts and circumstances sufficient to warrant a court of equity to compel a specific performance of the contract sued on? Appellants contend that time is not of the essence of said contract, and claim that the rule that should govern in this case was stated by Chief Justice Marshall in *Brashier v. Gratz,* 6 Wheat. 533, as follows: "If then, a bill for a specific performance be brought by a party who is himself in default, the court will consider all the circumstances of the case, and decree according to those circumstances." Referring to the class of cases to which the above rule applies, Justice Story, in *Taylor v. Longworth,* 14 Pet. 172, says: "But in all such cases the court expects the party to make out a case free from all doubt, and to show that the relief he asks is, under all the circumstances, equitable, and to account in a reasonable manner for his delay

and apparent omission of his duty." This rule was laid down in the case of the sale of a town lot, where an actual sale had been made, and $2,458.33 of the purchase price was paid on the day of the purchase, while in the case at bar there was no contract of purchase—simply an option to purchase—no part of the purchase price was paid down, or paid at all. The rule that should govern in the case at bar, we think, was correctly laid down by the supreme court of Idaho in the case of *Settle v. Winters,* 2 Idaho, 215, 10 Pac. 216. It is there held that time is of the essence of the contract when the character of the property involved renders it liable to great fluctuations in value, and that this rule should be adhered to in the construction of contracts for the purchase and sale of mining properties. Waiving the rule laid down in that case, and testing the case at bar by the rule in *Taylor v. Longworth, supra,* should the demurrer have been sustained? In other words, does the amended complaint state a cause of action free from all doubt, and show that the relief asked is, under the circumstances stated, equitable; and does it in a reasonable manner account for the delay and default in the tender of the purchase price, and the delay in bringing this suit? The amended complaint alleges that the appellants entered into the possession of said mining claim, and expended more than $500 per month, until they had expended more than $5,000, in prospecting and developing said mine, prior to the first day of September, 1888; that, after expending said sum, to wit, on the first day of September, 1888, they elected to purchase the said two-thirds interest in said mining claim, and elected to form a corporation for the purpose of purchasing and working said mining claim, and notified said defendants, Comegys, Wolfard and Morgan, of such election; and further alleges that said defendants Comegys, Wolfard and Morgan, for a valuable consideration, entered into a supplemental agreement with the plaintiffs, whereby they (the said Comegys, Wolfard and Morgan) agreed with plaintiffs that plaintiffs should have until the first day of October, 1888, in which to elect to purchase the two-thirds interest in said mining claim mentioned in said agreement of March 6, 1888, and that the time for making the payment of the $3,000 therein mentioned was by said supplemental agreement also extended

until said first day of October, 1888. It will be observed from the said allegations that the appellants elected to purchase said two-thirds interest in said mine, and also elected to incorporate as per terms of said agreement, and that they notified defendants, Comegys, Wolfard and Morgan, of such election, and that thereupon said Comegys, Wolfard, and Morgan, for a valuable consideration, agreed to extend the time to October 1, 1888, which the appellants should have to elect to purchase the two-thirds interest in said mine, and also extended the time for the payment of the $3,000 until the first day of October, 1888. Is it not significant that, after appellants had elected to purchase said two-thirds interest, they should pay the defendants a valuable consideration for extending the time in which to elect to purchase? Is it not also significant that, after electing to purchase the two-thirds interest and to incorporate, they should pay a valuable consideration for time in which to elect to purchase, and not also have the time extended in which to elect to incorporate?—as it was contended in the argument by counsel for appellants that the time had arrived on September 1, 1888, for them to elect whether they would incorporate or not. If time was not of the essence of this contract, and so considered by the appellants, why pay a valuable consideration for an extension of the time, and have it extended to a fixed date?

Appellants contend that respondents were not in a position to comply with their covenants in said agreement, for the reason that the interest of said defendant Morgan in said mine had been encumbered by the levy of a writ of attachment thereon to secure the payment of $750, and for the further reason that Toole, Elgin, and respondent Morgan had brought suit against respondents Comegys and Wolfard for the purpose of obtaining a decree for a one-sixth of said mine; that for these reasons the appellants were excused from tendering the purchase price, when due by the terms of said contract, as such tender would have been an idle act. The amended complaint fails to show that appellants did not have full knowledge of said encumbrance and suit on the first day of September, 1888, when they paid a valuable consideration for an extension of the time in which to elect to purchase said mine, and in which to pay the $3,000. Instead, then, of standing on the proposition "that, as

respondents could not convey the whole mine, free from said attachment lien, and the claim of Toole and Wilcox to an undivided one-sixth interest therein, they paid a valuable consideration for the extension of the time in which to elect to purchase, after having once elected, as alleged. When the first day of October, 1888, arrived, they did not tender the $3,000 then due, not because the respondents, Comegys, Wolfard and Morgan, were not in a position to convey the two-thirds interest, but because they were not in a position to convey the whole mine to a company thereafter to be incorporated. Thus it will be observed that on September 1, 1888, appellants acted on the principle that time was of the essence of the contract, and paid for an extension of time, but on the first day of October, 1888, and since said date, they have acted on the theory that time was not of the essence of said contract.

It is alleged in the amended complaint that said mine had been developed from a mere prospect into a mine worth many thousands of dollars, by the expenditures of appellants. What, then, was the condition? A mine worth thousands of dollars, with $3,000 due the respondents on the first day of October, 1888, provided appellants elected to purchase two-thirds of said mine, and $14,000 due from appellants on December 1, 1888. Under such circumstances, would not the appellants have been in better standing in a court of conscience if they had tendered to respondents on October 1, 1888, the $3,000, less the amount necessary to satisfy said attachment lien of $750? Would they not, by thus doing, have shown themselves more ready, willing, prompt, and eager to comply with their covenants in said contract than they have by refusing to tender the first payment, for the reason that the respondents were not in a position to convey one-third of said mine to a corporation not yet in existence, after having conveyed to appellants two-thirds thereof? Appellants contend that their delay and omission in tendering payment are justified, because they had elected on September 1, 1888, to incorporate a company to purchase and work said mine, and respondents were not in a position to convey the one-third interest to a corporation not yet in esse. The question arises as to the date when appellants had the right to elect to incorporate a company for the purpose of purchasing and work-

ing said mine by the terms of said agreement. The appellants covenanted, by the terms of said agreement, to expend $3,000 in the development of said mine prior to September 1, 1888, at the rate of not less than $500 per month. They were therein given the option to purchase an undivided two-thirds interest in said mine on or before September 1, 1888, for the sum of $17,000, $3,000 payable on September 1, 1888, and $14,000 payable on December 1, 1888. After setting forth the above covenants, the agreement proceeds as follows: "Whereupon, after said conditions and terms are fully complied with on the part of the parties of the second part (appellants here), and as soon as said $14,000 shall have been paid to the parties of the first part, according to the terms and in the manner hereinbefore set forth, then the parties of the first part herein agree and covenant with the parties of the second part to remise, release, and forever quitclaim unto the parties of the second part an undivided two-thirds interest in the said 'Tuscumbia' mine. Upon the parties of the second part purchasing the said two-thirds in said Tuscumbia mine as aforesaid, they, the said parties of the second part, may elect to form a corporation for the purposes, among others, of purchasing and working said mine." By the terms of said contract the appellants had the right to elect to incorporate a company for the purpose of purchasing and working said mine when they had paid or tendered the entire purchase price of $17,000, and not before; for it is expressly stipulated in said agreement that, as soon as said $17,000 shall have been paid according to the terms and in the manner set forth in said agreement, the first parties thereto, to wit, respondents, Comegys, Wolfard and Morgan, agreed to remise, release and forever quitclaim unto the appellants the undivided two-thirds interest in and to said Tuscumbia mine; that upon the said appellants purchasing the two-thirds interest in said mine, as aforesaid, they might then elect to form a corporation for the purpose of purchasing and working said mine, and not before. The covenants in said agreement are too plain to be misunderstood or to require construction. The appellants (by the terms of said agreement) had no right to elect to form a corporation for the purpose of purchasing and working said mine until they had paid the $17,000 as stipulated. Besides, the amended

complaint alleges that a supplemental agreement was entered into on the first day of September, 1888, and for a valuable consideration the respondents extended the time which appellants had to elect to purchase a two-thirds interest in said mining claim, and extended the time for the payment of the $3,000 to October 1, 1888; but it is not alleged that the time to elect to form a corporation, as aforesaid, was also extended. If, as contended by appellants, September 1, 1888, was the time at which they should elect to purchase a two-thirds interest therein, and the time to elect to form a corporation for the purchase of the whole mine, it would appear to us that, if they procured more time in which to elect to purchase said two-thirds interest and in which to pay the $3,000, and failed to secure an extension of the time in which to elect to incorporate a company, they had abandoned the idea of or desire to form such corporation, or that respondents had refused an extension of time for that purpose. As one of the points urged by appellants is that they had elected to incorporate a company, and as respondents were not in a position to convey one-third of said mine to said corporation, they were exonerated from making any tender for that reason. We do not believe that said agreement will bear the construction which was placed upon it by counsel for appellants in their argument of this case to this court, and the construction given it in the complaint, as to the time when appellants were in a position to elect whether to organize a corporation or not; but appellants' construction of said contract is a circumstance which this court may and ought to consider in the determination of this case. The appellants contend that, as they had been in possession of said mine since taking possession thereof under said agreement, that is a circumstance in their favor. The complaint shows that appellants have been in the possession of said property from the time of taking possession thereof under said agreement up to the time of bringing this suit. It also shows that appellants expended more than $5,000 to prospecting and developing said mine prior to September 1, 1888, but it does not show that they have expended one dollar thereon since said last-mentioned date. They held possession, but failed to do development work. The record further shows that the respondents, Comegys, Wolfard, and

Morgan, were in a position to convey to the appellants an undivided two-thirds interest in said mine, as late as the twenty-second day of May, 1889, the date when respondent Morgan conveyed an undivided one-fourth interest therein to respondent McKune, the only cloud thereon being the attachment lien for the small sum of $750 against respondent Morgan's interest. But, by failing to make said tender, they have shown themselves not ready, willing, prompt, and eager to comply with the conditions imposed on them by the terms of said agreement. If the appellants had tendered the $3,000 when due, and the $14,000 when due, and respondents had failed and refused to clear the title of said encumbrance of $750, and had refused to convey the two-thirds interest which they had agreed to convey, appellants' position before a court of equity would be very different from what it now is. Another circumstance which the court may consider in this case is the long delay of appellants in bringing this suit. This suit was not brought until over a year had elapsed after the right to an action had accrued, and no excuse is offered for this delay. We are of the opinion that the appellants, by their amended complaint, do not make out a case free from doubt; that they do not show that the relief asked for is, under all the circumstances, equitable; that they have not accounted in a reasonable manner for their delay and failure to comply with their covenants in said agreement; and are of the opinion that the judgment of the court below should be affirmed, with costs of appeal to the respondents, and it is so ordered.

Huston and Morgan, JJ., concur.