(December 12, 1896.)

# IDAHO GOLD MINING COMPANY v. UNION MINING AND MILLING CO.

[47 Pac. 95.]

FINDINGS OF FACT.—*Held,* that the findings of fact are not supported by the evidence.

MINING CONTRACT—OPTION—TIME ESSENCE OF CONTRACT.—In an option to purchase a mining claim, where time is of the essence of the contract, it is obligatory upon the would-be purchaser to perform the stipulations by him to be performed within the time specified in the contract.   If he fails to do so, his option to purchase may be forfeited.

DEED—SUFFICIENCY OF DESCRIPTION.—A deed conveying the Robinson mine and millsite, and containing also the following description: "Also all machinery, engines, boilers . . . . hereby conveying to said C. Jeff. Clark all of the property, real, personal and mixed, belonging to said William C. Schutz, and located in said county of Bingham, Idaho," *held,* sufficient to convey the Austin mining claim owned by said Schutz, in said county, at the date of the execution of said deed.

(Syllabus by the court.)

APPEAL from District Court, Bannock County.

S. C. Winters, C. C. Dey and W. H. Bramel, for Appellant.

If the contract between Chalmers and respondent company is construed as making it the duty of Chalmers and his associates to furnish an abstract and place a deed in escrow, yet the failure to do so did not dispense with timely performance or tender of performance on the part of the Union Mining and Milling Company. (*Kelsey v. Crowther,* 162 U. S. 404-408, 16 Sup. Ct. Rep. 808.) The prior defaults of the respondent company in failing to pay royalties, to work the mine, etc., excused Chalmers and associates from furnishing an abstract and from placing deed in escrow, and those defaults not being waived *ipso facto* the contract ceased and became null and void. Time being the essence of the contract, the party is not entitled to an extra minute. (*Settle v. Winters,* 2 Idaho, 215, 10 Pac. 221, and cases cited; *Waterman v. Banks,* 144 U. S. 394, 402, 403, 12 Sup. Ct. Rep. 646; *Grey v. Tubbs,* 43 Cal. 359.) When payments are to precede the conveyance it is no excuse for non-payment that there is not a present existing capacity to convey a good title. (*Robb v. Montgomery,* 20 Johns. (N. Y.) 15; *Easton v. Montgomery,* 90 Cal. 307-315, 25 Am. St. Rep. 123, 27 Pac. 280.) Objection is made to the sixth finding of fact because the same finds in conflict with the evidence that the title to the Austin Mine was in Schutz, and not in Chalmers and his associates. Schutz, on May 22, 1893, was the owner of the two mining claims described in the complaint and contracts, and on that day by deed conveyed to Clark the Robinson mining claim and millsite, "also all the machinery, engines, boilers . . . . hereby conveying to said C. Jeff Clark all of the property, real, personal and mixed, belonging to said William C. Schutz and located in said county of Bingham, Idaho." This deed passed the title to the Austin to Clark. (*Pettigrew v. Dobbelar,* 63 Cal. 396; *Lick v. O'Donnell,* 3 Cal. 59, 59 Am. Dec. 383; *Brown v. Warren,* 16 Nev. 228; *Frey v. Clifford,* 44 Cal. 335; 1 Greenleaf on Evidence, 14th ed., sec. 297; Bishop on Contracts, sec. 376, and cases cited.) The findings are contrary to law because they fail to respond to the issues raised

by the pleadings.   It is the duty of the court to find upon the
issues presented by the pleadings.   (*Reeding v. Perasso,* 62 Cal.
515; *Bagg v. Smith,* 53 Cal. 88; *Taylor v. Reynolds,* 53 Cal.
686.)   Where the court fails to find upon an issue raised by
the pleadings, the findings are not merely insufficient, but they
are evasive of the record, and contrary to law.   In such case
a special exception is not necessary, because the error is not
an error of law occurring at the trial as contemplated by sub-
division 7 of section 4439 of the Revised Statutes, but it is an
error occurring subsequent to the trial.   (*Ball v. Kehl,* 95 Cal.
606, 30 Pac. 780; *Traverso v. Tate,* 82 Cal. 170, 22 Pac. 1082;
*Spotts v. Hanley,* 85 Cal. 155, 24 Pac. 738; *Knight v. Roche,*
56 Cal. 15, leading case.)   The Union Mining and Milling
Company's contract was merely an option to purchase; time was
of the essence not alone by express stipulation, but by reason
of the character of the property involved, and either the fail-
ure to pay royalties, to work the property, to pay or tender the
$1,500 installment due November 14, 1894, absolutely forfeited
the contract so that it could not have been specifically enforced.
(*Durant v. Comegys,* 3 Idaho, 204, 28 Pac. 425, 428; *Water-
man v. Banks,* 144 U. S. 394-403, 12 Sup. Ct. Rep. 646; *Settle
v. Winters,* 2 Idaho, 215, 10 Pac. 216; *Kelsey v. Crowther,* 162
U. S. 404, 16 Sup. Ct. Rep. 808; *Richardson v. Hardwick,* 106
U. S. 252, 1 Sup. Ct. Rep. 213; *Martin v. Morgan,* 87 Cal.
203, 22 Am. St. Rep. 240, 25 Pac. 350; *Kelsey v. Crowther,* 7
Utah, 519, 27 Pac. 695; 3 Pomeroy's Equity Jurisprudence,
sec. 1408, and notes and cases cited.)

F. S. Dietrich, for Respondent (S. McDowall and Lawrence
P. Boyle, of Counsel).

When a deed contains an accurate description by permanent
boundaries capable of being ascertained, a general reference to
the premises in addition, as in possession of the grantor or
grantee or referring to descriptions in former deeds, or a desig-
nation by name or locality, will not have the effect to enlarge
the grant, or pass title to lands outside of the boundaries given.
(Warvelle on Vendors, 373, 374; *Jones v. Smith,* 73 N. Y.
205; *Tyler v. Hammond,* 11 Pick. (Mass.) 193, and notes, 212;
*Thayer v. Finton,* 108 N. Y. 394, 15 N. E. 615; *Brunswick*

*Savings Inst. v. Crossman,* 76 Me. 577; Tiedman on Real Property, sec. 827, p. 663, note 4, sec. 829, p. 666, note 5; *Ingell v. Nooney,* 2 Pick. 362, 13 Am. Dec. 434; *White v. Gay,* 9 N. H. 126, 31 Am. Dec. 225; *Pogus v. Ward,* 10 Nev. 269.) Chalmers and associates never tendered or exhibited an abstract or title in themselves, and never executed or tendered or placed a deed in escrow to said mining property, or any part thereof, as agreed in contract. The parties having fixed the conditions in writing were bound by them; and we submit that the respondent was not required to make any tender whatever of the $1,500 stipulated for in the contract of August 16, 1894, therefore the case of *Kelsey v. Crowther,* 7 Utah, 519, 27 Pac. 695, 162 U. S. 404-408, 16 Sup. Ct. Rep. 808, has no application whatever. (*Wheeler v. Garcia,* 40 N. Y. 584; Waterman on Specific Performance, secs. 446, 442, 448; 2 Warvelle on Vendors, 773-775; Bishop on Contracts, 1st ed., secs. 694, 695, 697; *Hennessey v. Bacon,* 137 U. S. 78, 11 Sup. Ct. Rep. 17, *Welsh v. Darling,* 59 Vt. 136, 7 Atl. 547; 2 Parsons on Contracts, 528, note q; Benjamin on Sales, secs. 561, 562, 565; Clark on Contracts, 665-670.) A tender of performance need not be made when it would be wholly nugatory. (Waterman on Specific Performance, sec. 446, and notes.) A purchaser of land under an option entitled to a good title need not pay the purchase money until he is tendered a good title. (*Clark v. Gordon,* 35 W. Va. 735, 14 S. E. 255.) It is admitted by the complaint that Chalmers et al., the grantors, had conveyed to the respondent before the commencement of this action, the Robinson mine in controversy (and that was all they owned), and that both mines had been conveyed to respondent; therefore it would have been proper for the court to dismiss the suit, leaving the appellant to its remedy at law for damages against Chalmers et al. for the breach of the contract. (*Saur v. Ferris,* 145 Ill. 115, 34 N. E. 52; *Zundelowitz v. Webster,* 96 Iowa, 587, 65 N. W. 835; *Maguire v. Heraty,* 163 Pa. St. 381, 43 Am. St. Rep. 800, 30 Atl. 151; *Young Lock-Nut Co. v. Brownley Mfg. Co.* (N. J. Eq.), 34 Atl. 947.) The trial court finds that at all the times between the sixteenth day of August, 1894, and the commencement of this action respondent was asserting its rights under its contract, and that it

never abandoned or intended to abandon any of its rights thereunder. The question of abandonment is one purely of intention. (*Wimer v. Simmons,* 27 Or. 1, 50 Am. St. Rep. 685, 39 Pac. 6, 9; *Utt v. Frey,* 106 Cal. 392, 39 Pac. 807, 809; *Beaver Brook etc. C. Co. v. St. Vrain Reservoir etc. Co.,* 6 Colo. App. 130, 40 Pac. 1066, 1068; *Smith v. Hope Min. Co.,* 18 Mont. 432, 45 Pac. 632, 634.)

SULLIVAN, J.—This suit involves the ownership and right to possession of the Austin and Robinson lode mining claims, and the improvements thereon, situated in the Mt. Pisgah mining district, Bingham county. The plaintiff corporation seeks to have its equity in said property declared superior to the claim of defendant corporation. The trial was had in the district court of Bannock county, and judgment was rendered and entered in favor of the defendant company. This appeal is from the order overruling the motion for a new trial, and from the judgment. Five errors are assigned, four of which go to the sufficiency of the evidence to sustain the findings of fact, and that the findings of fact, as a whole, are contrary to law. The fifth assignment is that the court erred in refusing the motion for a new trial.

The facts are substantially as follows: On August 16, 1894, E. E. Chalmers and others made a contract with the defendant corporation, the Union Mining and Milling Company, whereby said company was given an option to purchase said named mining claims and a certain stamp-mill and other improvements. By the terms of said contract, the Union Mining and Milling Company agreed to commence active work on said mines as soon as practicable, and carry on said work in a miner-like manner, at its own expense, for the period of one year, and to keep all machinery, etc., in good order and repair, and to pay said Chalmers and his associates one-tenth of the certain proceeds of ores taken from said mines, immediately after selling the same, and to pay $1,500, less royalty, in ninety days from the date of said contract, at the First National Bank of Ogden, Utah, and, further, pay to said Chalmers and associates $4,500, less royalties, at said bank, on or before August 15, 1895; the entire consideration being $6,000.

Chalmers and his associates agreed in the same contract, on their part, to convey within one year, by warranty deed, to said corporation, said named mining claims, stamp-mill, and other improvements thereon particularly described; also, to furnish an abstract of title to said mining claims, and to place a deed to said property in escrow in said bank within ninety days after the date of said contract, and before the payment of said $1,500 should be made, with instructions to said bank to deliver the same to the said corporation upon the payment of $6,000, less royalties paid by said corporation. It was mutually agreed between the parties that time was of the essence of said contract, and that if said corporation failed to pay royalties or payments when due, as set forth in said contract, such sum or sums as may have been paid, together with all improvements made by said corporation on said property, should be forfeited to and retained by the first parties. Within a day or two after making said contract, the Union Mining and Milling Company took possession of said property. It did some work, repairing the mill and buildings, and worked the mine and mill, as the evidence shows, "experimentally merely," until September 24, 1894. On September 24, 1894, the mill burned, and work was suspended so far as working the mine was concerned. A little work was done after the fire, in the way of taking iron, tools, and some gold out of the ruins, and in repairing the roof of the blacksmith-shop. The mine was not worked, and no work toward the development of said mines was done. About the middle of October, 1894, the Union Mining and Milling Company sold the gold taken from said mines for over $900, and no part of said sum was paid over to Chalmers and associates until some time after the appellant corporation had made a contract with Chalmers and his associates, for the purchase of said mines and improvements, of which contract the defendant company had notice. After the burning of the mill, the matter ran along until the 31st of October, 1894, without the respondent corporation proceeding to repair the mill or work the mines; and Chalmers and associates, believing that the Union Mining and Milling Company had, for those and other reasons, abandoned the property, gave one Wilson a contract for the purchase of the

same, conditioned, however, upon the failure of the Union
Mining and Milling Company in making the payment of said
$1,500, as by the terms of the first-mentioned contract it had
agreed to do.   On the fifteenth day of November, 1894, John
A. Shettle, the manager of the Union Mining and Milling
Company, called at the bank in Ogden, and asked of the cashier
if the deed was there.   He was informed that it was not, and
he replied that he was prepared to pay the $1,500.   No tender
of the money was made further than the statement that he
(Shettle) was prepared to pay the $1,500.   The evidence
shows that the Union Mining and Milling Company was in-
solvent, and that Mr. Shettle borrowed $1,500 for the purpose
of making a conditional tender, agreeing to return the money
to the lender the following day.   It appears from the record
that some correspondence had been had between Shettle and
Chalmers in regard to the abstract of title which Chalmers
and his associates were to and did furnish the Union Mining
and Milling Company prior to the said fifteenth day of
November, when it claimed that it was discovered that Chal-
mers and his associates did not have the legal title to the
Austin mine.   It appears that one William Charles Schutz had
been the owner of said Robinson and Austin mines; and on
May 22, 1893, he executed a quitclaim deed to one C. Jeff
Clark, the grantor of Chalmers, and associates, conveying to
said Clark the said Robinson mine, by naming it in said deed,
which deed also contains the following clause: "And all the
property, real, personal, and mixed, belonging to said Wm. C.
Schutz, and located in said county of Bingham, Idaho."
Under that clause, appellant contends the Austin mine was
conveyed to said Clark, and, through Clark, Chalmers and
associates derived title.   At the date of said conveyance,
Schutz was the owner of both the Robinson and Austin mines,
and they were situated in Bingham county.   On November
16, 1894, the installment of $1,500 not having been deposited
at said bank, Wilson paid Chalmers and associates $300, the
first payment under the contract of October 31st, and there-
upon Chalmers gave to Wilson the following order:

Idaho, Vol. 5—8

"Ogden, Utah, November 16th, 1894.
"To Frank A. Putnam, William M. Lacey, Gus Bostrom, and George Halverson.

"Gentlemen: The John A. Shettle contract for the purchase of our Cariboo property is forfeited. The first payment on the W. A. Wilson contract—entered into subject to the Shettle contract—has been made promptly, as agreed between Mr. Nickerson and us. Mr. Nickerson representing W. A. Wilson, will be up there shortly,. to continue work on the mines. Please, therefore, let him into possession at once.

"Yours truly,
"E. E. CHALMERS."

The persons to whom said order was addressed were associates of Chalmers, and had signed the John A. Shettle contract, referred to in said order. On the seventeenth day of November, 1894, one Nickerson, acting for Wilson, presented the above order to Putnam (who had been at work for the Union Mining and Milling Company), and he gave Nickerson possession of said property for Wilson. Wilson began at once to reconstruct the mill and to make other improvements. The mill was completed about the 8th of January, 1895. On November 28, 1894, the Idaho Gold Mining Company, the appellant, by and with the consent of said Wilson, made a contract with Chalmers and associates for the purchase of the. property involved in this suit. Wilson thereafter assigned his contract to said corporation, and subsequent thereto all work done on said mines and in the construction of said mill was done by said company. The Union Mining and Milling Company had knowledge of the contracts made by Chalmers and associates with Wilson, and the Idaho Gold Mining Company also knew of the work being done in the reconstruction of said mill and on said mines. Said first-named company did not resume work on said mines, or offer so to do. It stood by, and saw Wilson and the Idaho Gold Mining Company reconstructing said mill, and making valuable improvements on said mines, at a cost of several thousand dollars, and not until the eighth day of February, 1895, did it serve notice on the Idaho Gold Mining Company that it was the owner of said

mines and improvements.. It appears from the record that William C. Schutz, the grantor of said Clark, resided in St. Louis, Mo.; and that said Shettle, some time prior to the twenty-third day of November, 1894, communicated with him in regard to the Austin mine, and offered to purchase the same. Said Shettle, as manager of the Union Mining and Milling Company, procured a quitclaim deed from Schutz for said Austin mine, dated December 11, 1894; and between January 29, 1895, and March 27, 1895, he procured conveyances from Chalmers and his associates for said Robinson mine. The cause was tried by the court, without a jury, and judgment was rendered and entered in favor of the defendant corporation, the Union Mining and Milling Company. A motion for a new trial was denied. This appeal is from the order denying a new trial, and the judgment.

Numerous errors are assigned, the principle of which is that the findings of fact are not supported by and contrary to the evidence. Finding of fact No. 3 is the first complained of. Said finding is as follows: "That immediately upon the execution of said contract, on said sixteenth day of August, as aforesaid, the Union Mining and Milling Company, by virtue of said contract, entered into possession of said property so described, and worked said mining claims, and operated said mill, until wrongfully ousted therefrom, on or about the sixteenth day of November, 1894, by one W. A. Wilson." There is no evidence to support that part of said finding. The mill was burned on the 24th of September, 1894, and there is not a scintilla of evidence showing that the Union Mining and Milling Company "worked said mining claims, and operated said mill," from that date until the sixteenth day of November, 1894. No work was done on the mines after the mill burned, and no effort made to repair the mill. The roof on the blacksmith-shop was repaired, and some gold taken from the ruins of the mill, as well as some iron and tools. But there is no evidence showing, or even tending to show, that the Union Mining and Milling Company, after the fire, attempted to comply with that provision of its contract, to wit, "to commence active work in, on, and about said mining property, and carry on said work in a miner-like manner for the period of

one year." The evidence shows that Wilson took possession of said mining properties lawfully and peaceably, with the consent of the agent of the defendant company, who was also an owner with Chalmers in said property.

The fourth finding of fact is complained of as error. That finding contains, *inter alia,* the following: "That the defendant Union Mining and Milling Company, at all times after the making of said contract A, stood ready and was able and willing to perform its part of the said contract, and. at the date specified in said contract, stood ready and willing to pay the amount agreed upon in said contract to be paid to the said first parties." There is no evidence to show that defendant corporation "stood ready and was able and willing to perform its part of said contract." On the contrary, the evidence shows that said company was insolvent, had failed to pay royalties as per said contract it had agreed to do, and had quit work entirely on said mines at least a month prior to November 16, 1894. The contract required active work in said mines, and the only active work shown to have been done by the manager of the defendant company after the middle of October was in trying to get a deed to the Austin mine from one Schutz. Standing ready, able, and willing to do active work cannot be taken for doing active work, as it is not shown that they were prevented from so doing by Wilson or appellant company. If Shettle had made tender of the $6,000 (the sum agreed to be paid for said mines) on the sixteenth day of November, 1894, and demanded a deed, then the case would have assumed a different aspect. But, according to his testimony, he had but $1,500, the amount of the partial payment agreed to be paid ninety days after the execution of said contract, and on the exhibit of the abstract of title and deposit of deed. This offer, if it can be considered an offer to pay the $1,500, did not release the Union Mining and Milling Company from its other covenants in said agreement. The active work "in, on, and about" said mining claims, as contemplated by the contract of August 16, 1894, ceased at the time the mill burned, and no effort was made to resume it. The failure to make the tender of the $1,500 in good faith, the failure to pay the royalty until after the contract of

October 31st had been entered into, and the payment and acceptance of $300 from Wilson, the failure to keep in repair buildings and machinery, and the failure to prosecute the development of said mines, were violations of the obligations of said contract, dated August 16, 1894. And the forfeiture of the Union Mining and Milling Company's rights under said last-mentioned contract was declared when Chalmers and his associates received the $300 paid by Wilson and the order given by Chalmers placing Wilson in possession of said mining claims and property. The Union Mining and Milling Company had notice of such forfeiture. Chalmers and his associates were then powerless to set aside or annul said contract so long as Wilson and his assignee performed the work and other duties imposed by it.

The contract of the Union Mining and Milling Company required it to continue active work upon said mines. As stated above, it ceased work when the mill burned on September 24, 1893. A little work was done after the fire in the way of saving the gold milled, picking out pieces of iron and tools from the ruins and repairing the roof on the blacksmith-shop. But defendant company ceased all work about the 15th of October. No forfeit was declared until November 16, 1893, after the payment of the installment of $1,500 was due. While it is true that said $1,500 was not due and payable until an abstract of title was presented and deed exhibited and deposited, it devolved upon the Union Mining and Milling Company, if it desired to continue the contract in force to make a tender in good faith of said $1,500 and to continue active work in the development and improvement of said mines. Neither of which was done.

It appears that Chalmers and associates were willing to waive the failure to continue active work, provided the $1,500 were paid as stipulated. As it was not paid a forfeiture was declared on November 16th, as above stated.

By the fifth finding of fact, the court finds that Chalmers and associates "were never able to and never did procure or tender or place in escrow," a deed to said mining claims, and did not furnish an abstract of title to said mining claims.

The abstract of title and deed were to have been furnished by Chalmers and his associates within ninety days after the 16th of August, 1894, and prior to the payment of the installment of $1,500 which defendant company agreed to pay. · The record discloses in fact that an abstract of title was furnished in time and objected to by defendant company's agent.

That objection was not sufficient to relieve the defendant company from the performance of the obligations imposed on it by said contract. The payment of the installment of $1,500 did not entitle the defendant to the possession of said deed and abstract of title, and the failure of Chalmers and associates to deposit the same within the time agreed did not relieve the defendant from making a tender of said $1,500 in good faith, and otherwise performing its covenants in said contract.

In *Kelsey v. Crowther,* 162 U. S. 404, 16 Sup. Ct. Rep. 808 (a case involving substantially the same principle as the case at bar), Mr. Justice Shiras, speaking for the court, said: "His failure to furnish the abstract might have justified the complainants in declaring themselves off from the contract, and might have formed a successful defense to an action for damages brought by Crowthers. But if they wished to specifically enforce the contract, it was necessary for the complainants themselves to tender performance. . . . . And the rule is still more stringently applied in the case of an optional sale, like the present one, where time is of the essence of the contract and where Crowthers could not have enforced specific performance."

In the case at bar the pretended tender was not made until the fifteenth day of November, 1894, which was ninety-one days after the sixteenth day of August, 1894. In fact, the defendant company wholly failed to perform the obligations imposed on it by the terms of said contract from and after about the middle of· October, 1894.

The defaults of the defendant company in failing to work · the mines and to pay royalty excused Chalmers and associates from furnishing the abstract of title and placing deed in escrow. It appears that Chalmers and associates had not waived those defaults, but perhaps intended to do so if the

installment of $1,500 was paid or tendered in good faith by the sixteenth day of November, 1894. The tender or deposit of the money was not made, and Chalmers received $300 from Wilson and gave him possession of said mines and property. Time being of the essence of the contract the defendant company was not entitled to further time to comply with the provision thereof. (*Settle v. Winters,* 2 Idaho, 21:. 10 Pac. 221; *Waterman v. Banks,* 144 U. S. 394, 12 Sup. Ct. Rep. 646.)

Mr. Chalmers states his reason for holding the contract of August 16th forfeited in his testimony as follows: "Mr. Shettle said he expected to make the money out of the mine with which to pay for it; and shortly after that the mill burned up and he made no effort to replace it; ceased work upon the property and apparently abandoned it. And he had taken out $900 in gold and never paid us the royalty which the contract calls for and was making efforts to sell it and that was the reason why the deed was not (deposited)."

An abstract of title was furnished to Shettle, the manager of the Union Mining and Milling Company which was not satisfactory to him. But the evidence shows that the defects in said abstract were within the power of Chalmers and associates to remedy and required no further deed from Schutz and only the recording of the deed from said Clark to Chalmers and his associates which was recorded on December 5, 1894.

By the sixth finding of fact the court found that after it was ascertained that Chalmers and associates had no title or claim or right to the Austin mining claim, and that the title was in William C. Schutz, defendant company was compelled with a large outlay of money to procure a deed to said mining claim. The evidence does not sustain this finding.

The evidence shows that the title to said Austin mine was in C. Jeff. Clark from whom Chalmers and associates had a deed conveying the Robinson and Austin mines, in escrow at Soda Springs, at the time said pretended title was procured by the Union Mining and Milling Company. It is shown that one William C. Schutz was the owner of said Robinson and Austin mining claims, and that on the twenty-second day of May,

1893, he conveyed to said C. Jeff. Clark the Robinson mining claim and millsite, naming them, and said deed contains the following, to wit: "Also, all the machinery, engines, boilers;. . . . . hereby conveying to said C. Jeff Clark all the property, real, personal, and mixed, belonging to said William C. Schutz, and located in said county of Bingham, Idaho." The Union Mining and Milling Company contends that the title to the Austin mining claim did not pass by said deed to C. Jeff. Clark. We cannot sustain that contention. The clause in said deed, to wit, "hereby conveying to said C. Jeff. Clark all of the property, real, personal, and mixed, belonging to said William C. Schutz, and located in said county of Bingham, Idaho," conveyed to said Clark whatever title said Schutz had in and to said Austin mine. (*Brown v. Warren,* 16 Nev. 228; *Lick v. O'Donnell,* 3 Cal. 59, 58 Am. Dec. 383; *Pettigrew v. Dobbelaar,* 63 Cal. 396; *Frey v. Clifford,* 44 Cal. 335; 1 Greenleaf on Evidence, 14th ed., sec. 297; Bishop on Contracts, sec. 376; *Clifton Heights Land Co. v. Randell,* 82 Iowa, 89, 47 N. W. 905.) Clark having the title to both of said mining claims, conveyed the same, by deed dated September 27, 1893, to said Chalmers and associates. The deed was in escrow at Soda Springs, and was taken out by Chalmers, with the $300 Wilson paid him on the 16th of November, upon the contract of October 31, 1893, and was duly recorded on the fifth day of December, 1894. The conveyance procured by the Union Mining and Milling Company from Schutz gave it no title to said mine, and the fact that it expended a large sum of money in procuring said conveyance is immaterial in this case.

By the seventh finding of fact, the court found that the Union Mining and Milling Company fully and faithfully performed and kept all of the requirements and obligations and agreements upon its part to be done or performed, etc. Conceding that the Union Mining and Milling Company had faithfully kept and performed its obligations in said contract up to November 15th, there is no evidence showing that any of the duties imposed by said contract were performed after that date. It did not work the mine. It did not account for royalties at the times agreed to. In fact, it did nothing. Mr. Shettle testified that he knew of the negotiations between

Chalmers and Wilson as early as November 14, 1894. He also testified that his intention was, after the mill burned, to develop the mines, and expose a greater amount of ore before his company went to the expense of rebuilding the mill. Mr. Thomas testified that Shettle said that he would wait until they (the plaintiff company) got the mill up; then he would take it away from them, and run it. While it is true Shettle denied making that statement, as a matter of fact he did wait until the mill was completed, and then took possession by writ of restitution. The Union Mining and Milling Company stood by, and let the plaintiff company expend several thousand dollars in the improvement and development of said property, and then did just what the evidence shows Shettle said he would do. By that finding, it is found that during the month of January, 1895, the defendant company procured deeds from Chalmers and his associates, conveying to defendant the title to the Robinson mine, and that this was to the satisfaction of Chalmers and associates. Those facts do not strengthen defendant company's case, as it had notice of the contract of Chalmers and associates with W. A. Wilson and the Idaho Gold Mining Company; and Chalmers and his associates should not be permitted to violate their obligations in the last-mentioned contract, so long as Wilson and the Idaho Gold Mining Company keep and perform theirs. The defendant company was not vigilant and active in asserting its pretended rights, and vigilance and good faith are required in this class of cases. (*Waterman v. Banks*, 144 U. S. 394, 12 Sup. Ct. Rep. 646; *Durant v. Comegys*, 3 Idaho, 204, 28 Pac. 425.)

By the eighth finding of fact, the court finds, among other things, that the defendant company was endeavoring to assert its rights to procure title under said contract, and that it had not abandoned and did not intend to abandon, said contract or said property. This finding is not sustained by the evidence. The defendant company's intentions are best shown by its acts. After the 16th of November, to the date that the work of rebuilding the mill was completed, and even later, down to February 8, 1895, no effort was made to regain possession of said mining properties, and no notice was served upon the Idaho Gold Mining Company that the defendant company

claimed any rights under the contract of August 16, 1894. The defendant company had full knowledge that the plaintiff company was making valuable improvements on said properties at a large outlay of money, and, instead of its actively working said mines or endeavoring to do so, it was running a race with Chalmers and associates to ascertain which party could first procure a quitclaim deed to the Austin mine from Schutz. The acts of defendant company clearly show that it had not only forfeited, but also abandoned, its rights under said contract of August 16, 1894, and was endeavoring to procure title to said Austin mine from a different source than through Chalmers and associates. That it did afterward procure a conveyance from Chalmers and his associates to the Robinson mine, milesite, and other property is immaterial, as that company had notice of the contracts made by Chalmers and associates with Wilson.

The judgment of the court below is reversed, with instructions to enter judgment in favor of appellant in accordance with the prayer of the complaint. Costs awarded to the appellant.

Morgan, C. J., and Huston, J., concur.